**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

UNITED STATES OF AMERICA                CRIMINAL ACTION NO. 16-00244-01
                                        CIVIL ACTION NO. 19-0921

VERSUS                                  JUDGE S. MAURICE HICKS, JR.

ASHLEY OWENS (01)

**MEMORANDUM RULING**

Before the Court is a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C § 2255 filed by Petitioner Ashley Owens ("Owens") *pro se*. See Record Document 94. The United States of America ("the Government") opposes the motion. See Record Document 97. Owens has filed a reply. See Record Document 100. For the reasons set forth below, Owens's motion is **DENIED.**

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This prosecution concerned Owens's role in a scheme orchestrated by Quinetta Louise Grant ("Grant") to steal or unlawfully obtain automobiles, switch their Vehicle Identification Numbers ("VINs"), and obtain "clean" or "washed" titles to those automobiles. See Record Document 63-2. Grant, using her automobile broker's license, would obtain VINs of totaled vehicles from insurance auction websites. See Record Document 78 at ¶ 22. Grant would then provide these VINs to accomplices who had stolen automobiles, and they would create VIN plates for the stolen automobiles using the numbers provided by Grant. See id. Owens, who was Grant's sister, and Felicia Simpson ("Simpson"), Owens's friend, would then obtain fake titles for the vehicles through a company called Lagniappe Auto Title in Louisiana. See id. at ¶ 23.

Law enforcement agents identified Grant following an investigation into a stolen automobile from a residence in Miami, Florida. See id. at ¶¶ 10-12. When they executed a search warrant at Grant's home in Douglasville, Georgia, investigators found VIN tags for numerous vehicles, dealer license plates, and items connected to Owens. See id. at ¶¶ 10-12, 16-17. The items connected to Owens included a FedEx overnight delivery envelope sent from Owens to Grant, Louisiana "Permission to Process Transactions" forms completed in Owens' name, and other documents such as Acts of Donation and Notices of Transfer of Vehicles. See id. at ¶¶ 16-17.

In light of the number of documents found at Grant's residence that concerned Louisiana vehicles, investigators contacted the Louisiana Office of Motor Vehicles ("OMV"), which surveyed title-related activity at the West Monroe branch of Lagniappe Auto Title. See id. at ¶ 23. The survey revealed that Simpson had processed all the title paperwork for the vehicles identified as a result of the search of Grant's residence. See id.

As part of the subsequent investigation, agents conducted surveillance on Lagniappe Auto title and observed Owens, carrying paperwork, arriving at and leaving the business in a Toyota Avalon automobile. See id. at ¶ 26. When investigators later executed a search warrant at Lagniappe, they found documents showing Simpson, with Owens's assistance, had secured "washed" titles for stolen vehicles. See id. at ¶ 32.

Investigators determined that 104 stolen vehicles were involved in the VIN-switching and title-cleansing scheme. See id. at ¶ 41. The Pre-Sentence Investigation Report ("PSR") (Record Document 78) includes a table that details the year, make, model, original VIN, value, and further information regarding efforts to track down the vehicles.

The total value of all the stolen vehicles involved in the scheme was $2,450,107.50. See id. at ¶ ¶ 41, 42.

In October 2016, Owens was charged by Indictment with one count of conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1349; and three counts of mail fraud, in violation of 18 U.S.C. § 1341. See Record Document 78 at ¶¶ 1-2. In May 2017, she pleaded guilty to the conspiracy charge. See id. at ¶ 5. Owens's plea agreement "recommend[ed] that loss and restitution attributable to [Owens's] conduct is greater than $550,000 but less than $1,500,000" but expressly acknowledged that the recommendation was "not binding on the Court or Probation Office." Record Document 63 at 4.

The final version of the PSR calculated Owens' advisory range using the 2016 version of the sentencing guidelines. See Record Document 97 at 5. The PSR recommended a base offense level of 7, pursuant to U.S.S.G §§ 2X1.1 and 2B1.1, the provisions applicable to conspiracy to commit mail fraud. The following enhancements were added: sixteen levels because the loss of $2,450,107.50 exceeded $1.5 million but was less than $3.5 million (U.S.S.G. § 2B1.1(b)(1)(I)); two levels because the offense involved more than ten victims (U.S.S.G. § 2B1.1(b)(2)(A)); two levels because the offense involved stolen property (U.S.S.G. § 2B1.1(b)(4)); two levels because the offense involved sophisticated means (U.S.S.G. § 2B1.1(b)(10)); and two levels because the offense involved an organized scheme to steal vehicles or vehicle parts (U.S.S.G. § 2B1.1(b)(14)). Neither the Government nor Owens objected to the PSR. See Record Document 78 at 40. In December 2017, Owens was sentenced to 78 months

imprisonment. See Record Documents 72 & 74. This sentence was affirmed by the Fifth Circuit. See United States v. Owens, 738 F. App'x 299 (5th Cir. 2018).

Owens timely filed the instant *pro se* motion under Section 2255, accompanied by a memorandum, which raised issues regarding the application of U.S.S.G. § 2B1.1, claims that her counsel failed to review the PSR with her, and additional sentencing enhancements were misapplied. See Record Document 94. The Government filed a timely response, objecting to the motion. See Record Document 97. Owens then filed a reply. See Record Document 100.

### LAW AND ANALYSIS

Liberally construing Owens's petition, this Court reads it to argue that she received constitutionally ineffective assistance of counsel in connection with her sentencing. See Record Document 94. Owens appears to raise several overlapping claims related to the enhancements added to her sentence. First, Owens asserts that her attorney should have objected to the sixteen-level enhancement under U.S.S.G. § 2B1.1(b)(1)(I), on the grounds that the Government breached the plea agreement. See id. Second, Owens claims that her attorney failed to review the PSR with her. See id. Finally, because Owens never reviewed the PSR, she was prevented from making objections to the application of the two-level enhancements from U.S.S.G. § 2B1.1(b)(2)(A), U.S.S.G. § 2B1.1(b)(4), and U.S.S.G. § 2B1.1(b)(10).

The Government counters these arguments by maintaining that Owens is not entitled to relief because she cannot meet either prong of the ineffective assistance of counsel standard as to any of her claims. See Record Document 97 at 9.

## I.    Legal Standards

To prevail on an ineffective assistance of counsel claim, a petitioner must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). To prove deficient performance, the petitioner must show that counsel's actions "fell below an objective standard of reasonableness." Id. at 688. To prove prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011).  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. See Strickland 466 U.S. at 694. With specific regard to sentencing, the defendant must demonstrate a reasonable probability that, but for counsel's errors with respect to sentencing matters, she would have received less time in prison. See U.S. v. Grammas, 376 F.3d 433, 438 (5th Cir. 2004). Failure to establish either deficient performance or prejudice defeats the claim. See Strickland 466 U.S. at 697.

## II.    Analysis

The Court finds that Owens has failed to establish both prongs of the Strickland test, in that she has failed to establish either deficient performance or prejudice. Considering each of her claims in turn, none are sufficient to establish she received deficient assistance from counsel or that she was prejudiced due to the deficient performance.

First, Owens argues that her counsel failed to properly object when the Court determined the loss for sentencing purposes was $2,425,107.50. She seems to assert that her attorney should have objected to this finding on the grounds that the Government "breached" the plea agreement because the determined loss was more than what was anticipated in the plea agreement. See Record Document 94-1 at 1-2. The Government conversely argues that trial counsel was not ineffective because any such objection would have been frivolous in light of the Owens's role in the fraudulent scheme, the non-binding nature of the agreement, and Owens's sworn declaration offered at sentencing. See Record Document 97 at 11.

Owens is correct that her plea agreement contained a recommendation that the "loss and restitution attributable to [Owens's] conduct is greater than $550,000 but less than $1,500,000." Record Document 63 at 4. This recommendation is less than the actual loss determined at sentencing. However, the plea agreement signed by Owens clearly states that Owens understands that the recommendation "is not binding on the Court or Probation Office." Id. Additionally, that same section of the plea agreement bears the heading "NON-BINDING LOSS & RESTITUTION RECOMMENDATIONS." Id. The final version of the PSR set forth detailed information about each of the 104 stolen vehicles involved in the VIN-switching and title-cleansing scheme. See Record Document 78 at 10-25. By adding the value of the stolen cars, the PSR determined a total loss of $2,450,107.50. See id. at 25. The Court was not obligated to limit its findings as to loss to a value within the range referenced in the plea agreement. Indeed, the commentary to U.S.S.G. § 6B1.4(d) clearly states:

> …[T]he court cannot rely exclusively upon stipulations in ascertaining the factors relevant to the determination of sentence. Rather, in determining the

6

factual basis for the sentence, the court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information.

This is necessarily true in this case, as this Court ordered the U.S. Probation Office to identify specific victims as well as specific loss amounts during the presentence investigation, which the Court then relied on for sentencing. <u>See</u> Record Document 86 at 2. Owens's attorney's decision not to object to a non-issue cannot be said to fall below an objective standard of reasonableness. Consequently, Owens's claim that the Government breached the plea agreement and that her counsel was ineffective for failing to object to this "breach" is without merit.

Turning next to Owens's claim that her trial counsel was ineffective because he failed to review the PSR with her, the Court finds this claim is likewise meritless. In her supporting memorandum, Owens claims that her attorney never reviewed the PSR with her and the Court, during sentencing, never asked whether she was able to review the PSR with her counsel. <u>See</u> Record Document 94-1 at 2-3. The Government counters that such a direct line of questioning is not expressly required at the sentencing hearing, so long as the Court can draw reasonable inferences that the defendant had an opportunity to read and discuss the PSR with her counsel. <u>See</u> Record Document 97 at 13.

Federal Rule of Criminal Procedure 32(i)(1)(A) provides that before imposing a sentence, the court "must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report." The Fifth Circuit has rejected a rigid view that this rule requires a judge to specifically ask a defendant whether he has read the PSR. <u>See</u> <u>U.S. v. Victoria</u>, 877 F.2d 338, 340 (5th Cir. 1989). Instead, the Fifth Circuit adopted the more logical rule that the court "may draw

reasonable inferences from court documents, the defendant's statements, and counsel's statements when determining whether a defendant has 'had the opportunity to read and discuss' the [PSR] with his counsel." Id. (quoting Fed. R. Crim. P. 32(i)(1)(A)).

The Court documents, coupled with Owens's statements and her counsel's statements at sentencing clearly evidence the reasonable inference that Owens read and discussed the PSR with her attorney. The record shows the PSR was completed approximately five months before the sentencing hearing. See Record Document 78 at 1. No objections were filed to the original PSR or *any* of the subsequent addendums to the report. See id. at 37, 38, 40. At the sentencing hearing, the Court asked defense counsel about the PSR calculations and the latest addendum. See Record Document 86 at 3. The Court also specifically referenced Owens's sworn declaration offered at sentencing, which Owens herself confirmed as accurate. See id. at 6. See also Record Document 87. In both the sentencing hearing and the declaration, Owens attested that she would be willing to answer any questions about any information in the declaration, the PSR, or the Plea Agreement. See Record Document 87 at ¶ 11. See also Record Document 86 at 6. Finally, and most telling, is the fact that Owens had the opportunity to address the Court at her sentencing, and at no point during the sentencing hearing did she state she had not read or seen the PSR. See Record Document 86 at 7.

Given the time between the completion of the PSR and sentencing, the defendant's sworn declaration, and the court's pronouncements at sentencing, the Court reasonably infers that Owens was given the opportunity to read the PSR and discuss it with her counsel. Accordingly, this Court finds that Owens did not receive ineffective assistance of counsel based on her claim that her attorney never reviewed the PSR with

8

her. However, even assuming *arguendo* that her counsel did not read and discuss the PSR with her, Owens still fails to establish that she was prejudiced by this error. This brings us to Owens's third claim for ineffective assistance of counsel.

Owens's final claim is that her attorney rendered ineffective assistance of counsel because he failed to object to the multiple two-level enhancements applied to her sentence. Owens claims that, had she read the PSR, she "would have probably objected" to the application of the two-level enhancements from U.S.S.G. § 2B1.1(b)(2)(A), U.S.S.G. § 2B1.1(b)(4), and U.S.S.G. § 2B1.1(b)(10). Record Document 94-1 at 4. Although Owens fails to state her counsel's ineffectiveness or how she was prejudiced, each of the enhancements were properly applied, as the defendant's conduct involved more than ten victims, stolen properly, and relocating to another jurisdiction to evade law enforcement. See Record Document 78 at ¶¶ 49, 50, 51. Consequently, had Owens's attorney (or Owens herself) objected to these enhancements, such an objection would have been frivolous. "Because failure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness, [the defendant] has not established deficient performance." Green v. Johnson, 160 F.3d 1029, 1037 (5th Cir. 1998). Even more than that, because the enhancements were properly applied, Owens cannot establish with reasonable probability that but for this failure to object, Owens would have received less time in prison.

## CONCLUSION

For the reasons stated above, Owens's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Record Document 94) is hereby **DENIED**.

Pursuant to Rule 11(a) of the Rules Governing 2255 Proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "Before entering the final order, the court *may* direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Court (emphasis added). Unless a Circuit Judge or a District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. In this instance, a certificate of appealability is **DENIED** because the applicant has failed to demonstrate a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2255(c)(2).

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 30th day of September, 2022.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT